IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-03993-PAB

ADIS ARIEL HERNANDEZ-REDONDO,

    Petitioner,

v.

PAMELA BONDI, U.S. Attorney General, in her official capacity,
ROBERT GUADIAN, U.S. Immigrations and Customs Enforcement Field Office Director for the Colorado Field Office, in his official capacity, and
KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity, and
JUAN BALTASAR, Warden of GEO Group Aurora Inc, in his official capacity,

    Defendants.

## ORDER

This matter comes before the Court on Petitioner's Amended Petition for Writ of Habeas Corpus [Docket No. 1]. Respondents filed a response. Docked No. 9. Petitioner filed a reply. Docket No. 10. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### I. BACKGROUND

Petitioner is a 21-year-old citizen of Honduras. Docket No. 1 at 8. In or around 2021, petitioner arrived in the United States near the "southern border," where he was apprehended by immigration authorities shortly after crossing the border.[1] *Id.* At the

---

[1] In a declaration, Deportation Officer Irma Quinones states that, "[o]n March 20, 2021, U.S. Customs and Border Protection (CBP) agents apprehended Petitioner at or near Hidalgo, Texas after he illegally crossed the border into the United States from Mexico." Docket No. 9-1 at 2, ¶ 5. Ms. Quinones does not allege the exact date that

time, petitioner was a 16-year-old unaccompanied minor.  Docket No. 9-1 at 2, ¶ 5.  CBP issued a Notice to Appear in order to process petitioner for removal proceedings.  *Id.*, ¶ 7.  The Notice was never filed with the Executive Office for Immigration Review ("EOIR") and removal proceedings were not initiated.  *Id.* at 2-3, ¶ 10.  On May 19, 2021, petitioner was released to the custody of his brother.  *Id.* at 2, ¶ 9.

On November 22, 2025, petitioner appeared for a scheduled appointment with Immigration and Customs Enforcement ("ICE") and was taken into custody by the Department of Homeland Security ("DHS") and placed into immigration detention.  Docket No. 1 at 8.  On November 22, 2025, ICE issued a new Notice to Appear to petitioner, initiating removal proceedings under 8 U.S.C. § 1229(a).  Docket No. 9-1 at 3, ¶ 14.  The Notice charges petitioner with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  Docket No. 9-1 at 3, ¶ 14.  Respondents claim that petitioner is being held pursuant to 8 U.S.C. § 1225.  *Id.*, ¶ 13.

On November 24, 2025, petitioner requested a custody redetermination hearing before an immigration judge.  *Id.*, ¶ 15; Docket No. 1 at 9.  On December 1, 2025, petitioner appeared before an immigration judge for a custody redetermination hearing, but withdrew his request.  Docket No. 9-1 at 3, ¶ 16.  On December 8, 2025, petitioner appeared before an immigration judge for his initial hearing in removal proceedings.  *Id.*, ¶ 17.  The immigration judge advised petitioner of his rights and responsibilities in removal proceedings.  *Id.*  Petitioner requested additional time to prepare his case, and the immigration judge granted the request.  *Id.*  On December 29, 2025, petitioner and

---

petitioner entered the United States.  *See generally id.*  The Court need not resolve the date on which petitioner entered the country, finding it undisputed that he has been in the United States since at least March 20, 2021.

his attorney appeared for a master calendar hearing. *Id.*, ¶ 18. Petitioner has subsequently appeared for master calendar hearings on January 12, 2026 and January 26, 2026. *Id.* at 4, ¶¶ 19, 21. On January 23, 2026, petitioner filed an application for protection with EOIR. *Id.*, ¶ 20. Petitioner is currently detained at the Denver Contract Detention Facility in Aurora, Colorado. Docket No. 1 at 2; Docket No. 9-1 at 4, ¶ 22.

On December 12, 2025, petitioner filed a Petition for Writ of Habeas Corpus. Docket No. 1. Petitioner brings a claim for violation of the Immigration and Nationality Act ("INA") under 8 U.S.C. § 1226 and under *Maldonado Bautista v. Santacruz*, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). *Id.* at 10-11. Petitioner asks the Court to issue a writ requiring that respondents release petitioner within one day or, in the alternative, release petitioner unless petitioner is provided a bond hearing pursuant to § 1226(a) within seven days. *Id.* at 12.

## II. ANALYSIS

The parties disagree on the statutes that control petitioner's detention. Petitioner contends that his detention is controlled by 8 U.S.C. § 1226 because § 1226 governs the detention of non-citizens like petitioner who are present without inspection, were detained at or near the border and then released, lived in the interior of the country for several years without incident, and have now been re-arrested. *Id.* at 6-7. Because he believes that § 1226 applies, petitioner argues that respondents must provide him with a bond hearing. *See id.* Respondents, however, contend that 8 U.S.C. § 1225(b)(2)(A) applies to petitioner and that petitioner is therefore not entitled to a bond hearing. *See* Docket No. 9 at 2-12. Rather, he is subject to mandatory detention. *See id.*

The Court has analyzed this issue in four similar habeas cases and has determined that the detention of petitioners who were detained when already present in

3

the United States without inspection and who face removal proceedings due to their entrance without inspection is governed by 8 U.S.C. § 1226.  *Garcia-Perez v. Guadian*, No. 25-cv-04069-PAB, 2026 WL 89613, at *2-4 (D. Colo. Jan. 13, 2026); *Alfaro Orellana v. Noem*, No. 25-cv-03976-PAB, 2025 WL 3706417, at *2-4 (D. Colo. Dec. 22, 2025); *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019, at *1-4 (D. Colo. Dec. 18, 2025); *Portillo Martinez v. Baltazar*, No. 26-cv-00106-PAB, 2026 WL 194163, at *2-5 (D. Colo. Jan. 26, 2026).  Just like the petitioners in the above-cited cases, the Court finds that the petitioner in this case is detained pursuant to 8 U.S.C. § 1226 and is thus entitled to a bond hearing.

The INA "contemplates two detention regimes for noncitizens pending removal proceedings," one controlled by § 1225 and one controlled by § 1226.  *Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025) (citation omitted).  Section 1225 mandates detention pending removal proceedings, providing that, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  8 U.S.C. § 1225(b)(2)(A).  Unless certain exceptions are present, as provided for in §§ 1225(b)(2)(B) and (C), § 1225 "mandates detention without the opportunity for a bond hearing for the noncitizens to whom it applies."  *Hernandez*, 2025 WL 2996643, at *3.  Section 1226, on the other hand, does not mandate detention, providing that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Under § 1226(a)(2), the Attorney General has the discretion to release a noncitizen on bond while removal proceedings are pending.  8 U.S.C. § 1226(a)(2).  "Federal regulations

4

provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

Respondents argue that *Jennings* supports the conclusion that § 1225(b) applies to "applicants for admission," which encompasses both noncitizens just arriving in the United States and noncitizens who are already present. Docket No. 9 at 5-7. "[A] proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [petitioner], who has been residing in the United States for more than two years." *Mendoza Gutierrez v. Baltasar*, No. 25-cv-2720-RMR, 2025 WL 2962908, at *5 (D. Colo. Oct. 17, 2025) (citation omitted) (collecting cases).

The Court disagrees with respondents' contention that *Jennings* supports mandatory detention. The Supreme Court in *Jennings* held that, "[i]n sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)" and that "[i]t also authorizes the Government to detain certain aliens *already in the country pending the outcome of removal proceedings* under [ ] § 1226(a)." *Jennings*, 583 U.S. at 289 (emphasis added). Therefore, *Jennings* distinguishes between noncitizens seeking admission, who are subject to § 1225, and noncitizens who are already present in the country, who are subject to § 1226.

Respondents also point to *Jennings's* finding that § 1225(b)(2) serves as a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Docket No. 9 at 6 (quoting *Jennings*, 583 U.S. at 287) (emphasis

5

omitted). Respondents argue that petitioner falls within this catchall provision. *Id.* This language from *Jennings* does not stand for the proposition that any "applicant for admission" who falls outside § 1225(b)(1) must necessarily be covered by § 1225(b)(2). "While it is true that Section 1225(b)(2) is broader than § 1225(b)(1), that does not mean that § 1225(b)(2) applies to *all* other noncitizens in the United States who have not been admitted." *Hernandez*, 2025 WL 2996643, at *6 (quoting *Mendoza Gutierrez*, 2025 WL 2962908, at *6) (internal quotations omitted). Furthermore, *Jennings* "did not address exactly which noncitizens are covered by § 1225(b)(2)." *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227, at *3 (D. Colo. Jan. 6, 2026). To adopt respondents' interpretation of *Jennings* would be to ignore "the greater context from *Jennings* . . . which makes clear that § 1225(b)(2)'s catchall provision—and, in fact, all provisions of § 1225—apply to noncitizens seeking admission into the country, as opposed to those who are already in the country." *Hernandez*, 2025 WL 2996643, at *6 (quoting *Jennings*, 582 U.S. at 289) (internal quotations omitted).

Respondents' argument that § 1225(b)(2)(A) applies to noncitizens already residing in the United States is contrary to the plain language of § 1225. "The weight of authority interpreting § 1225 has recognized that for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Loa Caballero v. Baltazar,* No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (internal quotation and citation omitted) (quoting 8 U.S.C. § 1225(b)(2)(A)). Section 1225(b)(2)(A)'s requirement that an applicant for admission be "seeking admission"

6

"requires that the applicant must be presently and actively seeking lawful entry into the United States." *Id.*  Therefore, noncitizens who "have been here for years upon years and never proceeded to obtain any form of citizenship . . . are not 'seeking' admission" as defined in § 1225(b)(2)(A). *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025).  While these kinds of noncitizens, like petitioner, "may technically be a noncitizen present in the United States who has not been admitted [making] them an applicant for admission," that does not mean that they are "seeking admission." *See id.* (internal quotations omitted).

Congress's 2025 amendment of § 1226 to add subsection (c)(1)(E) provides further support that petitioner is subject to § 1226.  Section 1226(c)(1)(E) mandates detention for a narrow category of noncitizens who entered the country without inspection.  8 U.S.C. § 1226(c)(1)(E).  In January 2025, Congress amended § 1226, adding § 1226(c)(1)(E).  *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  Section 1226(c)(1)(E) provides that the "Attorney General shall take into custody any alien who—"

> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and

> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,

> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E).  This provision would be meaningless if noncitizens already residing in the United States were all subject to mandatory detention.  *See Salcedo*

7

*Aceros v. Kaiser*, 2025 WL 2637503, at *10 (N.D. Cal. Sept. 12, 2025) ("If Congress amended Section 1226 to create mandatory detention for certain inadmissible noncitizens, it follows that those noncitizens were not already subject to mandatory detention.").

For the foregoing reasons, "federal district courts have overwhelmingly rejected Respondents' broad interpretation of section 1225(b)(2)." *See Loa Caballero*, 2025 WL 2977650, at *5 (internal quotation and citation omitted) (collecting cases). This Court has similarly rejected respondents' interpretation. *See Florez Marin*, 2025 WL 3677019, at * 4; *Alfaro Orellana*, 2025 WL 3706417, at *4; *Garcia-Perez*, 2026 WL 89613, at *4.

Accordingly, the Court finds that petitioner is being detained under 8 U.S.C. § 1226(a) and not by § 1225(b)(2)(A). Because there is no evidence that petitioner has been provided a bond hearing, his current detention violates § 1226(a). The Court will grant the habeas petition and order respondents to provide petitioner a bond hearing within seven days of the date of this order.[2] *See Garcia Cortes v. Noem,* No. 25-cv-02677-CNS, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (ordering respondents to provide a bond hearing within seven days of the court's order granting the habeas petition); *Loa Caballero*, 2025 WL 2977650, at *1 (same); *Hernandez*, 2025 WL 2996643, at *8 (same). The Court declines to order petitioner's release as a remedy because "§ 1226(a) does not require release—it provides DHS the discretion to grant an alien release on bond." *Briales-Zuniga*, 2026 WL 35227, at *4. Furthermore, an

---

[2] Because the Court will grant the habeas petition based on a finding that § 1226(a) entitles petitioner to a bond hearing, it does not reach the question of petitioner's potential membership in the *Maldonado Bautista* class.

immigration judge is better suited to consider whether petitioner poses a flight risk or danger.[3]  See id.; Loa Caballero, 2025 WL 2977650, at *9.

### III. CONCLUSION

Therefore, it is

**ORDERED** that Petitioner's Amended Petition for Writ of Habeas Corpus [Docket No. 1] is **GRANTED**.  It is further

**ORDERED** that respondents shall provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **seven days** of the date of this Court's order.  It is further

**ORDERED** that, within **five days** of petitioner's bond hearing, the parties shall file a status report indicating whether the bond hearing was held and whether bond was granted or denied.

DATED February 4, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[3] As for petitioner's request for attorney's fees, see Docket No. 1 at 12, the Court will not consider the request because petitioner fails to comply with the Local Rules of the District of Colorado.  A motion for attorney's fees must be filed in accordance with D.C.COLO.LCivR 54.3.  See D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit. . . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").